E-FILED
Monday, 13 December, 2021  08:21:01 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| CHRISTAL FISHER & JEREMY FISHER,  )<br><br>)<br>Plaintiffs,  )<br><br>)<br>v.  )<br><br>)<br>ETHICON, INC. & JOHNSON & JOHNSON,  )<br><br>)<br>Defendants.  ) | Case No.  1:20-cv-1365 |

## <u>ORDER & OPINION</u>

Before the Court is Defendants' Motion for Summary Judgment (doc. 35). Plaintiffs responded (doc. 40), and Defendants replied (doc. 42). This matter is ripe for review. For the following reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part.

### BACKGROUND

Plaintiffs Christal and Jeremy Fisher initiated this litigation on August 29, 2016, by filing a short form complaint in the eleventh wave of *In re Ethicon, Inc. Pelvic Repair System Products Liability Litigation*, MDL No. 2327, No. 2:12-MD-2327, a multi-district litigation ("MDL") in the Southern District of West Virginia involving allegedly defective pelvic mesh products manufactured by Defendant Ethicon, Inc., a subsidiary of Defendant Johnson & Johnson. (*See* doc. 1). Following discovery and the filing of the instant Motions, Plaintiffs' case was transferred to this Court for resolution. (*See* doc. 43).

On March 26, 2010, Plaintiff Christal Fisher[1] was surgically implanted with a TVT-Obturator ("TVT-O") by David Steutermann, M.D., to treat possible stress urinary incontinence. (Doc. 1 at 4; doc. 36 at 3). The implantation was performed in conjunction with a laparoscopic-assisted vaginal hysterectomy and bilateral salpingo-oophorectomy. (Doc. 36 at 3). Dr. Steutermann, who performed the surgery, is now deceased. (Doc. 36 at 2).

Plaintiff saw Suzanne Holthaus, M.D., her OB-GYN since 2006, for post-operative visits. (Doc. 36 at 3). At a November 10, 2016, examination, medical records indicate there was "a tiny piece" of "mesh exposure in [Plaintiff's] vagina." Plaintiff said she wanted the mesh removed, rather than clipped. *Id.* Plaintiff underwent a revision procedure on January 18, 2017; one-half centimeter of mesh exposure was found, but there was no erosion in the bladder or damage to the urethra or bladder. (Doc. 36 at 4).

Plaintiff states her injuries include vaginal pain, dyspareunia, pain and pulling sensation in abdomen, urinary urgency, urinary frequency, continued incontinence, mesh erosion, damage to vaginal tissue, and increased stress. *Id.*

### CONFLICT OF LAWS

The MDL court held that in cases like this, "a direct-filed case, the choice of law that applies is the place where the plaintiff was implanted with the product." *Belanger v. Ethicon, Inc. (In re Ethicon, Inc.)*, No. 2:12-MD-02327, 2014 U.S. Dist.

---

[1] All subsequent references to "Plaintiff" refer to Plaintiff Christal Fisher, unless otherwise noted.

2

LEXIS 15292, at *2574 (S.D. W. Va. Jan. 30, 2014) (citing *Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 U.S. Dist. LEXIS 6216, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014)). Plaintiff Christal Fisher was implanted with a TVT-O in Illinois. (Doc. 1 at 4). Therefore, Illinois's choice of law rules apply.

Illinois's choice of law rules apply the "most significant relationship" test from the Restatement (Second) of Conflicts of Law. *See, e.g.*, *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 899–902 (Ill. 2007). The test presumes to apply the laws of the state where the injury occurred, "which may be overcome only by showing a more or greater significant relationship to another state." *Id.* at 903.

As the state of Plaintiffs' residence and where Ms. Fisher's implant surgery and most of her relevant medical treatment occurred (doc. 1 ¶ 11; doc. 5 at 2, 6), Illinois is the place of Plaintiffs' alleged injuries, and the law of Illinois presumptively applies to Plaintiffs' substantive claims. *See, e.g.*, *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 740–41 (S.D. W. Va. 2014). The factors that may overcome that presumption do not strongly point toward any state other than Illinois, *see* Restatement (Second) of Conflict of Laws, § 145 (2nd 1988), and the parties agree that Illinois substantive law applies to this case. Therefore, the Court will apply Illinois substantive law in its analysis.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The parties must support their assertions that a fact is disputed or cannot be genuinely disputed by citing to admissible evidence in the record. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

The movant has the burden of proving there is no reason to have a trial, *Celotex*, 477 U.S. at 323, which may be satisfied in two ways. The movant may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or point to an absence of evidence to support an essential element of the nonmovant's case without submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322–25. If the movant fails to meet its burden, the Court cannot enter summary judgment—even if the nonmovant fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992); *see also Vaughn v. Ethicon, Inc.*, No. 20-cv-562, 2020 U.S. Dist. LEXIS 180240, at *2–3 (S.D. Ill. Sep. 30, 2020).

Once the movant has met its burden, the nonmovant cannot rely on its pleadings alone; it must present evidence demonstrating a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018). "Some metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return

a verdict for the [nonmovant] on the evidence presented." *Anderson*, 477 U.S. at 252. The record must be viewed in the light most favorable to the nonmovant, and the Court must draw all reasonable inferences from the evidence in the nonmovant's favor. *See Anderson*, 477 U.S. at 255; *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 536 (7th Cir. 2018). However, "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

## DISCUSSION

Defendants move for summary judgment on all eighteen claims[2] asserted by Plaintiffs (doc. 35 at 1): negligence (Count I), strict liability – manufacturing defect (Count II), strict liability – failure to warn (Count III), strict liability – defective product (Count IV), strict liability – design defect (Count V), common law fraud (Count VI), fraudulent concealment (Count VII), constructive fraud (Count VIII), negligent misrepresentation (Count IX), negligent infliction of emotional distress (Count X), breach of express warranty (Count XI), breach of implied warranty (Count XII), violation of consumer protection laws (Count XIII), gross negligence (Count XIV), unjust enrichment (Count XV), loss of consortium (Count XVI), punitive damages (Count XVII), and discovery rule and tolling (Count XVIII).

---

[2] Defendants do not move for summary judgment on "discovery rule and tolling" (Count XVIII) or "punitive damages" (Count XVII) because these counts are not separate causes of action. However, Defendants ask for prejudicial dismissal of the case in its entirety if summary judgment is granted on all of Plaintiffs' other claims. (Doc. 35 at 1 n.1).

In their Response to Defendants' Motion, Plaintiffs conceded summary judgment on Counts II, IV, VIII, XI, and XII, as well as the manufacturing defect portions of Counts I, X, and XIV. (Doc. 40 at 3, 5–6, 9). Accordingly, the Court grants Defendants' Motion as unopposed on those counts and partial counts.

In addition, Plaintiffs' claims for punitive damages (Count XVII) and discovery rule and tolling (Count XVIII) are not causes of action. Rather, punitive damages are a remedy and the discovery rule and tolling are rebuttals to a statute of limitations defense. Accordingly, Counts XVII and XVIII are summarily dismissed. However, this ruling does not preclude Plaintiffs from later seeking punitive damages or using a discovery rule or tolling argument.

For the reasons detailed below, Defendants' Motion is denied as to each of Plaintiffs' non-conceded claims.

## I. Plaintiffs' Negligence Claims (Counts I, X, & XIV)

Regarding the "manufacturing defect portion of" these claims, the "Fishers concede they have yet to elicit any evidence of a manufacturing defect." (Doc. 40 at 3). Therefore, Defendants' Motion is granted with respect to that portion of this claim. However, Defendants' Motion is otherwise denied with respect to these claims, as the failure to warn basis for Plaintiffs' negligence claims persists, as analyzed below in Section II.

## II. Strict Liability – Failure to Warn (Count III)

Defendants argue Plaintiffs cannot meet their burden to demonstrate causation because Plaintiff Christal Fisher's implanting surgeon, Dr. Steutermann, is dead, so Plaintiffs cannot prove the doctor would not have implanted the TVT-O

had he received different warnings about the product. (Doc. 36 at 4–7; doc. 42 at 5). Plaintiffs respond that Illinois law presumes warnings will be heeded and followed if given, so they can satisfy causation by demonstrating the deficiency of Defendants' warnings. (Doc. 40 at 3–5).

Under the learned intermediary doctrine, Defendants did not need to warn Plaintiffs directly about the danger of the TVT-O; their duty to warn can be satisfied by "sufficiently appris[ing] physicians of the risk associated with the use of the [device]." *In re Depakote*, No. 14-CV-847, 2015 WL 4776093, at *4 (S.D. Ill. Feb. 14, 2015) (applying Illinois law). However, the learned intermediary doctrine does not apply if Defendants did not sufficiently warn the learned intermediary. *Hansen v. Baxter Healthcare Corp.,* 764 N.E.2d 35, 43 (Ill. 2002). Furthermore, "the adequacy of warnings is a question of fact, not law, for the jury to determine." *Id.*

In this case, there is a material dispute of fact as to whether Defendants' warning was adequate. On summary judgment, the Court must construe the evidence in the light most favorable to the nonmovant, Plaintiffs. Plaintiffs' general regulatory expert, Dr. Peggy Pence, concluded Defendants' warnings were inadequate and misleading warnings because they, *inter alia*, failed to warn against known adverse reactions to the TVT-O. (Doc. 40 at 5; doc. 40-5 at 74–109). Defendants dispute that conclusion with Dr. Robert Harris's testimony that "The TVT Instructions for Use were not misleading and adequately warned of potential complications that were specific to the use of the device." (Doc. 35-4 at 12.).

Thus, Defendants' Motion is denied as to this claim.

### III.      Strict Liability – Design Defect (Count V)

Defendants argue Plaintiffs failed to establish proximate cause because although Plaintiffs' case specific expert, Dr. Neeraj Kohli, concluded Mrs. Fisher's injury "is the direct result of the implanted TVT-O mesh product produced by Gynecare," he did not identify any a particular *defect* in the TVT-O that caused her injury. (Doc. 36 at 9). Thus, Defendants seek summary judgment by demonstrating an absence of evidence for the proximate cause element of Count V.

Plaintiffs retort that Dr. Kohli's case specific report states the "TVT-O [is] alone the exclusive cause [of Plaintiff's injuries]" (doc. 35-5 at 13) and refers to Dr. Kholi's general causation report, which identifies particular defects in the TVT-O design that caused Plaintiff's injury. (Doc. 40 at 6–7).

Defendants attempt to strip Dr. Kholi's case specific opinion of all context. Dr. Kholi's case specific opinion that the "TVT-O was defective in its design" was not made in isolation; it was made alongside Dr. Kholi's general causation opinion that the TVT-O's polypropylene mesh is unsuitable for its use and its blind insertion in close proximity to vital anatomical structures contrary to sound surgical principals. (Doc. 40-6 at 8–9). A reasonable mind could not read Dr. Kholi's reports and believe Plaintiffs failed to present evidence supporting proximate cause.

Because Defendants have failed to demonstrate that Plaintiff's claim lacks evidence "to support an essential element," the Court cannot enter summary judgment in Defendants' favor. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). Defendants' Motion is denied as to this claim.

## IV.  Plaintiffs' Fraud Claims (Counts VI, VII, & IX)

Defendants argue Plaintiffs' claims for fraud (Count VI), fraudulent concealment (Count VII), and negligent misrepresentation (Count IX) should be dismissed as duplicative of Plaintiffs' failure to warn claim (Count III).[3]

Plaintiffs first respond by saying Defendants' argument is essentially a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and has been waived because it was not asserted before Defendants filed a pleading. Defendants' Reply correctly states "Rule 12(b)(6) is not a defense which can be waived." (Doc. 42 at 4); *see* Fed. R. Civ. P. 12(h)(1).[4]

Plaintiffs next respond by citing four opinions by the Southern District of Illinois in a different MDL (2385) that did not dismiss fraud claims as duplicative of a failure to warn claim.[5] (Doc. 40 at 8).

Defendants reply by citing an earlier decision in the present MDL (2327) in which the court dismissed fraud claims as duplicative of a failure to warn claim, *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 743–44 (S.D. W. Va. 2014). In that case, the court noted Illinois had not ruled on the issue and made an *Erie* guess[6] that the

---

[3] Defendants also argue those claims fail due to lack of causation, the same argument they made in Section II. The argument fails for the reasons articulated in Section II.
[4] This ineffectual argument is made throughout Plaintiffs' Response (doc. 40), but the Court addresses it only this once.
[5] *Smith v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 886 F. Supp. 2d 911 (S.D. Ill. 2012); *Sellers v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 881 F. Supp. 2d 992 (S.D. Ill. 2012); *Garner v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 888 F. Supp. 2d 911 (S.D. Ill. 2012); *Fitzgibbons v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 3:12–cv–00614, 2012 WL 3020083 (S.D. Ill. July 24, 2012).
[6] The term "*Erie* guess" references *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and refers to when federal courts predict how a state's supreme court would rule on law

9

Illinois Supreme Court would apply the learned intermediary doctrine to fraud claims to prevent an end run around the doctrine in medical device cases. *Id.*

The Court agrees. In order to prevent an end run around the learned intermediary doctrine, the Illinois Supreme Court would no doubt apply the doctrine to fraud claims in medical device cases. Otherwise, Illinois plaintiffs could prevail on fraud claims against defendants on the basis that the defendants failed to disclose all material risks associated with a medical device to the plaintiffs themselves—even when the defendants appropriately warned plaintiffs' physicians of all such risks. Such a result would be anathema to the learned intermediary doctrine's purpose. Thus, the Court holds that the learned intermediary rule applies to Plaintiffs' fraud claims.

However, the MDL court went on to grant summary judgment against that plaintiff's fraud claims, *id.*, which is where the undersigned diverges.

> "[E]ven if there is overlap in their factual or legal underpinnings, there is nothing that prevents a party from asserting multiple but legally distinct claims that arise from the same events." *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 U.S. Dist. LEXIS 69400, 2017 WL 1836443, at *6 (N.D. Ill. May 8, 2017); *see also Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 2020 U.S. Dist. LEXIS 128346, 2020 WL 4194986, at *7–8 (E.D. Ky. July 21, 2020) (rejecting argument that a plaintiff could not pursue fraud and misrepresentation claims that were similar to failure to warn claim)[.]

---

that has not been explicitly decided. *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (citations omitted) ("When resolving an issue of state law, a federal court must look to the final decisions of that state's highest court, and if there is no decision directly on point, then [it] must make an Erie guess to determine how that court, if presented with the issue, would resolve it.").

*Datil v. C.R. Bard, Inc.*, No. 19-C-8274, 2020 U.S. Dist. LEXIS 180567, at *16–17 (N.D. Ill. Sep. 30, 2020). While Plaintiff "cannot avoid the application of the learned intermediary doctrine to her [fraud] claims, the [fraud] and failure to warn claims remain distinct, and she can pursue them simultaneously." *Id.* Obviously, Plaintiff can only recover once for her injuries once, even if Plaintiff is entitled to those damages under multiple legal theories. *See, e.g.*, *Dial v. O'Fallon*, 411 N.E.2d 217, 222 (Ill. 1980) (holding "courts in Illinois have long recognized the legal principle that a plaintiff shall have only one satisfaction for an injury . . . irrespective of the availability of multiple theories that recovery for the injury can be sought under.").

Thus, Defendants' Motion is denied as to Plaintiffs' claims for fraud (Count VI) and negligent misrepresentation (Count IX). However, Defendants offer a further argument against Plaintiffs' claim for fraudulent concealment (Count VII).

A.   *Fraudulent Concealment (Count VII)*

"To state a cause of action for fraudulent concealment, also a form of common law fraud, plaintiffs must allege that defendants concealed a material fact when they were under a duty to disclose that fact to plaintiffs." *Hirsch v. Feuer*, 702 N.E.2d 265, 273 (Ill. App. 1st Dist. 1998) (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 588–93 (Ill. 1996)).

Defendants argue they had no duty to disclose safety hazards to Plaintiffs because Defendants did not have a fiduciary or confidential relationship with or occupy some other "position of superiority" over Plaintiffs. (Doc. 36 at 11). Plaintiffs responded that "knowingly omitt[ing] information regarding the safety and efficacy of the product with the intent to deceive, which resulted in injury to the consumer, is

enough to satisfy a claim for fraudulent concealment." Plaintiffs are correct: a party assumes a duty to disclose through *active* concealment of material facts. *Mitchell v. Skubiak*, 248 Ill. App. 3d 1000, 1005 (1993).

In addition, under the partial disclosure doctrine, Defendants, having made disclosures regarding the safety and efficacy of the TVT-O, were under a duty to correct materially incomplete or misleading statements. *See Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 276 (Ill. App. 2d Dist. 2015) (citations omitted) ("A statement that is technically true may nevertheless be fraudulent where it omits qualifying material since a 'half-truth' is sometimes more misleading than an outright lie. . . . Such half-truths may support a claim of fraudulent concealment.").

Plaintiffs have put forth evidence that Defendants failed to warn doctors of up to two-dozen known adverse reactions to TVT-O use, including dyspareunia, vaginal perforation, and death. (Doc. 40-5 at 82). Based on that evidence, a reasonable jury could find Defendants failed to correct materially incomplete or misleading statements or actively concealed material facts regarding the safety and efficacy of the TVT-O. (*See* doc. 40 at 9; doc. 40-5 at 74–109). Thus, viewing the facts in the light most favorable to the nonmovant Plaintiffs, Defendants' Motion is denied as to Plaintiffs' fraudulent concealment claim (Count VII).

## V.  Violation of Consumer Protection Laws (Count XIII)

Defendants argue this Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim is barred by part of that Act, 815 ILCS 505/10b(5), which used to state, "Nothing in this Act shall apply to any of the following: . . . (5) Claims seeking damages for conduct that results in bodily injury, death, or damage to

property other than the property that is the subject of the practice claimed to be unlawful." However, that statutory provision was declared unconstitutional in *Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (Ill. 1997), and repealed by 2019 Ill. Legis. Serv. P.A. 101-25 (H.B. 2472) (effective June 21, 2019). Thus, there is no bar preventing Plaintiffs' claim under the ICFA.

Defendants' Motion is denied as to this claim.

## VI.   Unjust Enrichment (Count XV)

Defendants raise two arguments against this claim: (1) Unjust enrichment is not an independent cause of action, but a contractual remedy, and (2) as "an equitable remedy, unjust enrichment is not available when there is an adequate remedy at law." (Doc. 36 at 13).

Plaintiffs respond that "[a]n unjust enrichment claim may be predicated on either quasi-contract or tort" and cite a case in which "the Court makes no mention of the unavailability of an unjust enrichment claim when there is an adequate remedy at law as Defendants argue." (Doc. 40 at 10) (citations omitted).

The Northern District of Illinois has thoroughly summarized Illinois law with respect to these issues:

> In Illinois, unjust enrichment is an equitable remedy that is available when no adequate remedy at law exists. *Wiegel*, 946 F. Supp. 2d 804, 809 (citing *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 1st Dist. 2005)). To state a cause of action for unjust enrichment, plaintiffs must "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (citing *Drury v. Cnty. of McLean*, 433 N.E.2d 666, 670 (Ill. 1982)). An unjust enrichment claim may be predicated on either quasi-contract or tort. *Peddinghaus v. Peddinghaus*, 692 N.E.2d

1221, 1225 (Ill. App. Ct. 1st Dist. 1998) (citing *Wolff v. Ampacet Corp.*, 673 N.E.2d 745, 749 (Ill. App. Ct. 1st Dist. 1996)). In general, the remedy of unjust enrichment is not available when a specific contract governs the parties' relationship. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (quoting *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977). Nevertheless, where a "plaintiff's unjust enrichment claim is based on tort, instead of quasi-contract, the existence of a specific contract does not defeat his cause of action." *Peddinghaus*, 692 N.E.2d at 1225. Finally, whether unjust enrichment is an independent cause of action or whether it must be tied to an underlying claim in tort, contract, or statute is unsettled in Illinois. *Compare Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004) ("Here, plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment."), *with Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 3rd Dist. 2009) ("[U]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."). In attempting to reconcile the apparent inconsistencies, the Seventh Circuit has suggested:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute.

*Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) *reh'g and suggestion for reh'g en banc denied* (Nov. 15, 2011). Thus, if an unjust enrichment claim is based on the same underlying conduct that forms the basis of a claim in contract, tort, or statute, "then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.*

. . . Nevertheless, . . . under Federal Rule of Civil Procedure 8(d)(2), [Plaintiff] is allowed to plead alternative claims despite any inconsistencies between those claims. . . . Here, . . . it is uncertain whether Plaintiffs will prevail on their [claims]. Furthermore, to the extent [the] unjust enrichment claim is based on the same conduct [as a surviving claim]—it remains viable. *See Cleary*, 656 F.3d at 518; *Sirazi v. Gen. Mediterranean Holding, SA*, No. 12 C 0653, 2013 U.S. Dist. LEXIS 29636, 2013 WL 812271, at *9 (N.D. Ill. Mar. 5, 2013) (finding "no basis to dismiss [an] unjust enrichment claim" where the plaintiffs'

underlying fraud claim survived the defendant's motion to dismiss).
Thus, the Court declines to dismiss [Plaintiffs'] unjust enrichment claim
on the grounds that it is not viable under Illinois law.

*Lake v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 922–24 (N.D. Ill. 2013).

Defendants' first argument is incorrect; unjust enrichment is not just a contractual remedy. In Illinois, unjust enrichment is also a remedy in tort and can constitute an independent cause of action when it is premised on misconduct that does not form the basis of another one of Plaintiffs' claims. *See Cleary*, 656 F.3d at 517–18 (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007)).

However, here Plaintiffs' unjust enrichment claim is dependent on Plaintiffs' tort claims. The unjust enrichment claim is based on Defendants' retention of Plaintiffs' money for a product that was allegedly not as safe and effective as Defendants purported it to be. This same conduct underlies Counts III (Failure to Warn), V (Design Defect), VI (Common Law Fraud), VII (Fraudulent Concealment), IX (Negligent Misrepresentation), and XIII (Consumer Protection Laws). If those Counts fail, then the unjust enrichment claim would fail also; how could it be unjust for Defendants to retain Plaintiffs' money if the TVT-O is found to not be defective, if no further warning or disclosure was needed, and if no fraud occurred?

At present, because at least one of its supporting Counts survives, Plaintiff's unjust enrichment persists as a claim in the alternative. Yet at the case's conclusion, Plaintiffs cannot recover on both unjust enrichment and another legal claim for the same underlying conduct—unjust enrichment is not available as a separate claim

where there is an adequate remedy at law. *See, e.g., Nesby v. Country Mutual Insurance Co.*, 805 N.E.2d 241, 243 (Ill. App. Ct. 2004).

Defendant's Motion is denied as to this claim.

## VII.   Loss of Consortium (Count XVI)

Defendants argue Mr. Fisher's loss of consortium claim is derivative of Mrs. Fisher's claims, which all fail, so summary judgment should be granted against this claim. (Doc. 36 at 14). Plaintiffs do not dispute that the claim is derivative. (Doc. 40 at 11).

> Th[is] claim is derivative and is viable only to the extent his wife's claims survive. *Johnson v. May*, 585 N.E.2d 224, 232 (Ill. App. 1992) ("To recover on a loss of consortium claim, the deprived spouse must prove liability on the part of the defendant, marriage to the injured spouse, and damages").

*Donaldson v. Johnson & Johnson*, No. 15-cv-14, 2021 WL 1754605, 2021 U.S. Dist. LEXIS 84679, at *17 (S.D. Ill. May 4, 2021) (a peer MDL 2327 case applying Illinois law). As many of Mrs. Fisher's claims persist, Defendants' Motion is denied with respect to Mr. Fisher's claim for loss of consortium.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (doc. 35) is GRANTED as to Counts II, IV, VIII, XI, XII, XVII, XVIII, and the manufacturing defect portions of Counts I, X, and XIV; and DENIED as to Counts III, V, VI, VII, IX, XIII, XV, XVI and the failure to warn portions of Counts I, X, and XIV.

SO ORDERED.

Entered this 10th day of December 2021.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
